## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

In re:                                    CASE NO.  6:13-bk-11557-KSJ

BLACKBEAR TWO, LLC                        CHAPTER 11

Debtor.

_____/

## PLAN OF LIQUIDATION
## SUBMITTED BY BLACKBEAR TWO, LLC

COUNSEL FOR DEBTOR

JUSTIN M. LUNA, ESQ.
CHRISTOPHER R. THOMPSON, ESQ.
LATHAM, SHUKER, EDEN & BEAUDINE, LLP
111 N. MAGNOLIA AVENUE, SUITE 1400
ORLANDO, FLORIDA, 32801

October 30, 2013

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:                                                CASE NO.  6:13-bk-11557-KSJ

BLACKBEAR TWO, LLC,                    CHAPTER 11

                          Debtor.
_____/

PLAN OF LIQUIDATION SUBMITTED
BY BLACKBEAR TWO, LLC

Blackbear Two, LLC ("Blackbear" or the "Debtor"), by and through its undersigned counsel, hereby proposes the following plan of liquidation (the "Plan"), pursuant to Chapter 11 of Title 11 of the United States Code.

**ARTICLE I – DEFINITIONS**.

For the purpose of the Plan, the following terms will have the meanings set forth below:

**Administrative Claim** shall mean a Claim for payment of an administrative expense of a kind specified in §§ 503(b) or 507(a)(1) of the Bankruptcy Code, including, without limitation, the actual, necessary costs and expenses incurred after the commencement of the Bankruptcy Case of preserving the Debtor's estate and operating the Debtor's business, including management fees or commissions for services, compensation for legal and other services and reimbursement of expenses awarded under §§ 330(a) or 331 of the Code, and all fees and charges assessed against the Bankruptcy Estate under Chapter 123 of Title 28, United States Code.

**Administrative Claims Bar Date** shall mean the date by which all Administrative Claims must be filed with the Bankruptcy Court to be allowed.  The Administrative Claims Bar

Date will be established by the Bankruptcy Court as a specific date prior to the Confirmation Date.

**Administrative Escrow** shall mean a carve-out from the Sales Proceeds in the amount of $15,000.00 to be held in escrow by the Liquidated Debtor and to be used for the payment of any administrative expenses incurred by the Liquidated Debtor post-Confirmation, including attorneys' fees incurred as a result of any claims objections.

**Allowed Administrative Claim** shall mean all or that portion of any Administrative Claim that has been or becomes allowed by Order of the Bankruptcy Court.

**Allowed Amount** shall mean the amount of an Allowed Claim.

**Allowed Claim** shall mean a Claim: (a) with respect to which a proof of Claim has been filed with the Bankruptcy Court in accordance with the provisions of § 501 of the Bankruptcy Code and Rule 3001 and within any applicable period of limitation fixed by Rule 3003 or any notice or Order of the Bankruptcy Court; (b) deemed filed, pursuant to § 1111(a) of the Bankruptcy Code, by virtue of such Claim having been scheduled in the list of Creditors prepared and filed by Debtor with the Bankruptcy Court, pursuant to § 521(1) and Rule 1007(b), and not listed as disputed, contingent, or unliquidated; or (c) deemed an Allowed Claim (including Allowed Secured Claims and Allowed Unsecured Claims) pursuant to the provisions of the Plan or any Order of the Bankruptcy Court. Unless otherwise provided in the Plan or unless deemed or adjudicated an Allowed Claim, pursuant to the provisions of the Plan or any Order of the Bankruptcy Court, an Allowed Claim shall not include any Claim as to which an objection to or proceeding challenging the allowance thereof has been interposed, within any applicable period of limitation fixed pursuant to the Plan, by Rule 3003, or any Order of the Bankruptcy Court, until such objection or proceeding has been overruled, dismissed, or settled by entry of a Final Order. Notwithstanding the filing of any such objection or the

3

commencement of any such proceeding, a Claim may be temporarily allowed for voting purposes, pursuant to the provisions of Rule 3018(a).  Unless otherwise specified in the Plan or any Order of the Bankruptcy Court, an Allowed Claim shall not include or accrue interest on the amount of such Claim maturing, incurred otherwise, or arising subsequent to the Petition Date.

**Allowed Interest** shall mean an Interest: (a) with respect to which a proof of Interest has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Rule 3001 or a Final Order; and (b) as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Rule 3001 or any Order of the Bankruptcy Court.

**Allowed Priority Tax Claim** shall mean a Priority Claim pursuant to Bankruptcy Code § 507(a)(8), to the extent such Priority Claim is or becomes an Allowed Claim.

**Allowed Unsecured Claim** shall mean an Unsecured Claim to the extent such Unsecured Claim is or becomes an Allowed Claim.

**Asset Purchase Agreement** shall mean that certain Asset Purchase Agreement executed by and between the Debtor and the Purchaser prior to the Confirmation Hearing, which shall be substantially in the form of the APA attached as Exhibit "A" to the Debtor's Disclosure Statement.

**Ballot** shall mean the form(s) distributed to each Creditor holding a Claim in an impaired Class, on which is to be indicated the acceptance or rejection of the Plan.

**Ballot Date** shall mean the date set by the Bankruptcy Court by which all votes for acceptance or rejection of the Plan must be received by the Bankruptcy Court or the balloting agent, as the case may be.

**Bankruptcy Case** shall mean this bankruptcy case of Blackbear Two, LLC, pending before the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, pursuant to Chapter 11 of the Bankruptcy Code.

**Bankruptcy Code** shall mean the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, and any amendments thereof.

**Bankruptcy Court** shall mean the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, in which Debtor's Bankruptcy Case is pending, and any Court having jurisdiction to hear appeals or certiorari proceedings therefrom.

**Bankruptcy Estate** shall mean the estate created pursuant to § 541 of the Bankruptcy Code by the commencement of the Debtor's Bankruptcy Case and shall include all property of the Estate as defined in such Section.

**Bar Date** shall mean the date fixed by Order of the Bankruptcy Court as the last date for the filing of Claims in this Bankruptcy Case.

**Blackbear Two, LLC** shall mean Blackbear Two, LLC, its past or present owners, affiliates, subsidiaries, employees, agents, representatives, officers, members, counsel, and all other persons or entities acting or purporting to act under its control.

**Business Day** shall mean a day other than a Saturday or a Sunday or any other day on which the majority of commercial banks located in Orlando, Florida are required or authorized to close.

**Cash** shall mean cash or cash equivalents, including but not limited to, checks, bank deposits, or other similar items.

**Causes of Action** shall mean all actions and causes of action (and the proceeds thereof), whether or not commenced as of the date hereof, all proceedings, commenced or to be commenced pursuant to Bankruptcy Code §§ 105, 502 and 544-554 (or equivalent provisions of

applicable non-bankruptcy laws) as well as all causes of action and claims that the Debtor or its estate had or may have and hold under Federal or state law.

**Claim** shall mean any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or any right to an equitable remedy for breach of performance, if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

**Class** shall mean any Class into which Claims or Interests are classified pursuant to the Plan.

**Class 1 Claim, Class 2 Claim, Class 3 Claim,** *etc.*, shall mean the specific Class into which Claims or Interest are classified pursuant to Article II of the Plan.

**Class 1 Escrow** shall mean the amount of Distribution Funds held in escrow until final resolution of the Insured Lawsuits and the final determination of the Allowed Amount of the Class 1 Claims, if any.  The amount of the Class 1 Escrow shall be equal to the amount necessary to pay the Class 1 Claims in full under the terms of the Plan as if each Class 1 Claim were allowed in the full amount of the proof of claim submitted by each Class 1 Claim Holder, if any.

**Confirmation** shall mean the process leading to and including the entry of the Confirmation Order, pursuant to § 1129 of the Bankruptcy Code.

**Confirmation Date** shall mean the date of entry of the Confirmation Order by the Bankruptcy Court.

**Confirmation Order** shall mean the Order entered by the Bankruptcy Court confirming the Plan in accordance with the provisions of the Bankruptcy Code and which is in form and content acceptable to the Debtor.

6

**Creditor** shall have the same meaning as set forth in § 101(1) of the Bankruptcy Code.

**Debt** shall have the same meaning as set forth in § 101 (12) of the Bankruptcy Code.

**Debtor** shall mean Blackbear Two, LLC.

**DePaulo** shall mean the plaintiff(s) in the Depaulo Lawsuit.

**DePaulo Lawsuit** shall mean that certain personal injury lawsuit styled as *Peter DePaulo, individually and as parent and natural guardian of Angelo DePaulo, a minor, v. Blackbear Two, LLC*, case number 2013-CA-006160-O, currently pending before the Orange County Circuit Court.

**Disbursing Agent** shall mean the Liquidated Debtor.

**Disclosure Statement** shall mean the Disclosure Statement approved for distribution by the Bankruptcy Court, pursuant to § 1125 of the Bankruptcy Code, together with any amendments or modifications thereto.

**Disputed Claim** shall mean a Claim against the Debtor that is not an Allowed Claim and which has not been disallowed by a Final Order of the Bankruptcy Court.

**Disputed Unsecured Claim** shall mean any Unsecured Claim that is not an Allowed Unsecured Claim.

**Distribution Funds** shall mean the net of: (i) the Sale Proceeds; and (ii) the proceeds from the liquidation of the Excluded Assets, *less* (iii) the Administrative Escrow; *provided, however*, that any Administrative Escrow funds remaining after payment of all post-petition administrative expenses shall be disbursed to Class 1 and Class 2 Holders *pro rata* in accordance with the Plan.

**Effective Date** shall mean the later of: (i) ten (10) days after the closing of a sale of the Sale Assets; or (ii) thirty (30) days after the Bankruptcy Court has entered the Confirmation Order, provided that no appeal of the Confirmation Order is pending; *provided, however*, that the

Effective Date shall not occur until all the preconditions to the occurrence of the Effective Date set forth in the Plan have been met. In the event that an appeal of the Confirmation Order is pending, the Effective Date may still occur on the 30th day after the entry of the Confirmation Order provided that the notice has been filed and Debtor stipulates in writing that the Effective Date shall occur on such date.

**Equity Interests** shall mean any and all issued or authorized membership interests, common stock, stock options, and warrants in the Debtor.

**Estate Assets** shall mean all the assets, property, and cash of the Debtor, as defined in § 541 of the Bankruptcy Code (excluding assets previously distributed, expended, or otherwise disposed of by the Debtor prior to the Confirmation Date not otherwise subject to recovery), wherever located or of whatever type or nature, existing as of the Confirmation Date.

**Excluded Assets** shall mean the Excluded Assets defined in Section 2.3 of the Asset Purchase Agreement between the Debtor and the Purchaser, including but not limited to: all cash; all accounts receivable; and all assets of the Debtor that are not Sale Assets.

**Final Order** shall mean an Order or judgment of the Bankruptcy Court, which is no longer subject to appeal or certiorari proceedings and as to which no appeal or certiorari proceeding is pending or, in the discretion of the Debtor, if an appeal is filed and no stay has been entered.

**Ground Lease** shall mean that certain lease between the Debtor and Gala Enterprises, Inc. for certain real property located at 7001 and 7011 International Drive, Orlando, Florida.

**Holder** shall mean the legal or beneficial Holder of a Claim or Interest and, when used in conjunction with a class or type of Claim or Interest, means a Holder of a Claim or Interest in such Class or of such type.

**Honeycutt** shall mean the plaintiff in the Honeycutt Lawsuit.

8

**Honeycutt Lawsuit** shall mean that certain lawsuit styled as *Audra Honeycutt as personal representative of the Estate of Justin Honeycutt v. Blackbear Two, LLC*, case number 2012-CA-011799-O, currently pending before the Orange County Circuit Court.

**Impaired Class** shall mean any Class whose members are Holders of Claims or Interests, which are impaired within the meaning of § 1124 of the Bankruptcy Code.

**Insider** shall have the same meaning as set forth in § 101(31) of the Bankruptcy Code.

**Insurance Company** shall mean the Debtor's liability insurance company that is defending the Insured Lawsuits.

**Insured Lawsuits** shall mean the DePaulo Lawsuit, the Roberts Lawsuit, and the Honeycutt Lawsuit, collectively, which are being defended by the Insurance Company.

**Liquidated Debtor** shall mean the Debtor after entry of an order confirming the Plan.

**Order** shall mean a determination, decree, adjudication, or judgment issued or entered by the Bankruptcy Court.

**Payment** shall mean the Cash to be paid under the Plan to the Holders of Allowed Claims.

**Person** shall mean an individual, corporation, partnership, joint venture, trust, estate, unincorporated organization, or a government or any agency or political subdivision thereof.

**Petition Date** shall mean September 18, 2013, the date on which Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

**Plan** shall mean this Chapter 11 plan of liquidation, as amended or modified in accordance with the terms hereof or in accordance with the Bankruptcy Code.

**Plan Payments** shall mean payments made by the Disbursing Agent pursuant to the terms of the Plan.

9

**Prepetition** shall mean the period of time preceding the Petition Date and concluding on the Petition Date.

**Priority Claim** shall mean a Claim, other than an Administrative Claim, to the extent such Claim is entitled to priority in payment under § 507 of the Bankruptcy Code.

**Priority Tax Claim** shall mean an unsecured Claim for taxes entitled to priority under § 507(a)(8) of the Bankruptcy Code.

**Professional** shall mean: (i) any professional retained in the Bankruptcy Case pursuant to an order of the Bankruptcy Court in accordance with §§ 327 or 1103 of the Bankruptcy Code; (ii) any attorney or accountant seeking compensation or reimbursement of expenses, pursuant to § 503(b) of the Bankruptcy Code; and (iii) any entity whose fees and expenses are subject to approval by the Bankruptcy Court as reasonable pursuant to § 1129(a)(4) of the Bankruptcy Code.

**Property** shall have the same meaning as the term "property of the estate" delineated in § 541 of the Bankruptcy Code.

**Purchaser** shall mean Orlando Slingshot, LLC, a foreign limited liability company, the purchaser of the Sale Assets pursuant to the Asset Purchase Agreement.

**Roberts** shall mean the plaintiff(s) in the Roberts Lawsuit.

**Roberts Lawsuit** shall mean that certain personal injury lawsuit styled as *Darrell Roberts, as parent and natural guardian of Madisson Roberts, a minor, v. Blackbear Two, LLC*, case number 2013-CA-010905-O, currently pending before the Orange County Circuit Court.

**Rule** or **Rules** shall mean the Federal Rules of Bankruptcy Procedure, as supplemented by the Local Bankruptcy Rules as adopted by the Bankruptcy Court.

**Sale Assets** shall mean the Acquired Assets set forth in Section 2.1 of the Asset Purchase Agreement between the Debtor and the Purchaser, including but not limited to: all billed and

unbilled accounts related to the business operations; all promotional allowances and vendor rebates; the Debtor's rights and obligations under the Ground Lease; any rights or causes of action, including the Causes of Action; all machinery, equipment, fixtures, trade fixtures, computer and information technology equipment and related data, telephone systems, and furniture for use in the business; all business inventory including office supplies and other intangible property; security deposits and prepaid business expenses; transferable permits, licenses, certifications, and approvals maintained by the Debtor; and the Debtor's goodwill and intangibles.

**Sale Proceeds** shall mean the net proceeds of the sale by the Debtor of the Sale Assets pursuant to the Asset Purchase Agreement.

**Unimpaired Class** shall mean any Class the members of which are the Holders of Claims or Interests, which are not impaired within the meaning of § 1124 of the Bankruptcy Code.

**Unsecured Claim** shall mean a Claim that arose or is deemed to have arisen prior to the Petition Date and is not a Secured Claim, Administrative Claim, or Priority Claim.

**Unsecured Creditor** shall mean a creditor holding an Allowed Unsecured Claim.

**United States Trustee** shall have the same meaning ascribed to it in 28 U.S.C.§ 581, *et seq*. and, as used in the Plan, refers to the office of the United States Trustee for Region 21 located in the Middle District of Florida, Orlando, Florida.

## ARTICLE II - CLASSIFICATION OF CLAIMS AND INTERESTS.

All Claims and Interests treated under Articles III-VII of the Plan are divided into the following classes, which shall be mutually exclusive:

A.     Class 1 – Insured Lawsuit Claims.

Class 1 consists of the Allowed Unsecured Claims of DePaulo, Roberts, and Honeycutt, respectively, after final resolution of the DePaulo Lawsuit, the Roberts Lawsuit, and the Honeycutt lawsuit, respectively.

B.     Class 2 – General Unsecured Claims.

Class 2 consists of all Allowed Unsecured Claims excluding Class 1 Claims.

C.     Class 3 – All Equity Interests.

Class 3 consists of any and all Equity Interests in the Debtor.

## ARTICLE III - ADMINISTRATIVE EXPENSES.

A.     Administrative Claims.

Any person, including any professional who has rendered services to the Debtor during the course of the Case and any employee that asserts an Administrative Claim arising before the Confirmation Date, including Claims under § 503(b) of the Bankruptcy Code shall, on or before the Administrative Claims Bar Date, file an application, motion, or request, as called for by the Rules, with the Bankruptcy Court for allowance of such Claim as an Administrative Claim specifying the amount of and basis for such Claim; however applicants or movants who filed applications, motions, or requests with the Bankruptcy Court before the Administrative Claim Bar Date, do not need to file a new application, motion, or request *except* with respect to Claims other than Claims that are the subject of previously filed applications, motions, or requests.     Failure to file a timely application, motion, or request for allowance of an Administrative Claim pursuant to this Section shall bar a claimant from seeking recovery on such Claim.

Unless such Holder agrees to a lesser distribution, each holder of an Administrative Claim shall be paid one hundred percent (100%) of its Allowed Claim from the Distribution

12

Funds within fourteen (14) days of the entry of the Confirmation Order, or, if the Claim does not become Allowed prior to the Effective Date, on the date the Allowed Amount of such claim is determined by Final Order of the Bankruptcy Court. The Debtor estimates the amount of the Allowed Administrative Expense Claims to be $30,000.00.

      B.     <u>Priority Tax Claims</u>.

Except to the extent that the Holder and the Debtor or Liquidated Debtor have agreed or may agree to a different treatment, each Holder of an Allowed Priority Tax Claim will be paid from the Distribution Funds after full satisfaction of the Allowed Administrative Claims. Debtor estimates the aggregate amount of Allowed Priority Tax Claims, including tangible personal property, and sales and use taxes, total approximately $0.00.

      C.     <u>U.S. Trustee Fees.</u>

The Liquidated Debtor shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) within ten (10) days of the entry of the Confirmation Order for pre-confirmation quarters, and simultaneously provide to the United States Trustee an affidavit indicating the cash disbursements for the relevant period; and the Liquidated Debtor shall continue to timely pay the United States Trustee the appropriate sums, based on all disbursements, required pursuant to 28 U.S.C. § 1930 (a)(6), until the earlier of the closing of this case by the issuance of a Final Decree by the Court, or upon the entry of an Order by this Court dismissing this case or converting this case to another chapter under the United States Bankruptcy Code, and the Liquidated Debtor shall timely provide to the United States Trustee an appropriate affidavit indicating all cash disbursements for each quarter.

## ARTICLE IV - TREATMENT OF IMPAIRED CLASSES.

Classes 1, 2 and 3 are Impaired. The Treatment for each class is as follows:

A.      Determination of Allowed Amounts.

Treatment prescribed for the Claims in the following sections of this Article IV shall in all events refer exclusively to the Allowed Amount of each respective Claim. In the event the Allowed Amount of any Claim is not determined by agreement or otherwise prior to the Effective Date, then the treatment prescribed shall be deemed effective as of the date of the determination of such Claim by agreement or Final Order or as otherwise provided under the Plan. Notwithstanding Confirmation of the Plan, the Debtor reserves the right to object to any Claim (other than Claims deemed in the Plan to be Allowed Claims) for any reason authorized by applicable bankruptcy and non-bankruptcy law as well as the right to assert that any such Claim includes amounts subject to equitable subordination or other equitable relief.

B.      Class 1 – Insured Lawsuit Claims.

Class 1 consists of the Allowed Unsecured Claims of DePaulo, Roberts, and Honeycutt, respectively, after final resolution of each respective plaintiff's lawsuit against the Insurance Company. In full satisfaction of their Allowed Class 1 Claims, Holders shall receive a *pro rata* distribution from the Distribution Funds after payment in full of all Allowed Administrative Expense Claims and Priority Claims. The Liquidated Debtor shall hold in escrow the Class 1 Escrow Amount, and upon final resolution of the Insured Lawsuits with the Insurance Company the Liquidated Debtor shall disburse such funds to all Class 1 and Class 2 Holders, *pro rata*, based on the Allowed Amount of the Class 1 Claims.

C.      Class 2 – General Unsecured Claims.

Class 2 consists of all Allowed Unsecured Claims excluding Class 1 Claims. In full satisfaction of their Allowed Class 2 Claims, Holders shall receive a distribution, *pro rata* with Allowed Class 1 Claims, from: (i) the Distribution Funds, after payment of all Allowed Administrative Claims and Allowed Priority Claims, and (ii) if necessary, the Class 1 Escrow.

14

Allowed Class 2 Claims that are insider claims shall receive no distribution under the Plan. Payments shall commence on the Effective Date.

        D.      <u>Class 3 – Equity Interests</u>.

        Class 3 consists of all Equity Interest in the Debtor. The equity of the Holders of Allowed Class 3 Interests will retain their interests for the sole purposes of performing administrative duties under this Plan until all assets of the estate have been fully liquidated and all proceeds thereof have been distributed in accordance with the Plan. After such time, equity interests shall be extinguished.

## ARTICLE V - UNEXPIRED LEASES AND EXECUTORY CONTRACTS.

        The Debtor shall have through and including 30 days after entry of the Confirmation Order within which to assume or reject any unexpired lease or executory contract; and, further, that in the event any such unexpired lease or executory contract is not assumed and assigned through the closing on the Asset Purchase Agreement with Purchaser or subject to a filed motion to reject by such date, then such unexpired lease or executory contract shall be deemed assumed and assigned to Purchaser. To the extent the Debtor rejects any executory contract or unexpired lease prior to the Confirmation Date, any party asserting a Claim pursuant to § 365 of the Bankruptcy Code arising from the rejection of an executory contract or lease shall file a proof of such Claim within thirty (30) days after the entry of an Order rejecting such contract or lease, and any Allowed Claim resulting from rejection shall be a Class 2 Claim. The Debtor intends to assume the Ground Lease and all executory contracts listed on its Schedule G. The Plan also provides for the Court to retain jurisdiction as to certain matters as stated in the Plan, including, without limitation, prosecution of the Causes of Action.

**ARTICLE VI - MEANS OF IMPLEMENTATION.**

The Plan is premised on the closing on the APA and the controlled distribution of the Sales Proceeds and the liquidation of the Excluded Assets, including collecting outstanding receivables. The Debtor believes that the controlled liquidation of the Excluded Assets will occur over a period not to exceed 60 days. All proceeds from the collection of accounts receivable will be deposited with the Liquidated Debtor and promptly distributed in accordance with the Plan.

      A.      <u>Sale of the Sale Assets</u>.

The Plan is premised on and funded by the sale to Purchaser of the Sale Assets free and clear of all liens, claims and encumbrances as more fully set forth in the Asset Purchase Agreement. Prior to the Confirmation Hearing, the Debtor and Purchaser shall execute the Asset Purchase Agreement. Because the Debtor needs to renew its liability insurance policy before December 23, 2013, the parties will stand ready to close as soon as possible after Confirmation.

      B.      <u>Distribution of Funds</u>.

The Distribution Funds will consist of: (i) the Sale Proceeds; and (ii) the proceeds of the liquidation by the Liquidated Debtor of the Excluded Assets, *less* (iii) the Administrative Escrow. The Distribution Funds will be disbursed as set forth below.

      C.      <u>Disbursing Agent</u>.

The Liquidated Debtor will serve as the Disbursing Agent for all distributions to be made under the Plan. The Liquidated Debtor will oversee and direct: (i) all claims objections; (ii) all disbursements to be made under the Plan; and (iii) all other actions required under the Plan, the Bankruptcy Code, or by order of the Bankruptcy Court. Tracy Kircher will serve as the President of the Liquidated Debtor. Ms. Kircher will be paid on an hourly basis at a rate of $50

per hour, and will be paid from the Administrative Escrow. The Debtor estimates that the total compensation for Ms. Kircher for work performed after Confirmation will not exceed $2,000.00.

D.    Disbursements

Disbursements to Holders of Allowed Administrative Claims and Allowed Priority Tax Claims will occur on the later of: (i) the Effective Date; or (ii) when such Claim becomes an Allowed Claim. The Liquidated Debtor shall make an initial disbursement to Holders of Allowed Class 2 Claims on the later of: (i) the Effective Date; or (ii) a date ten (10) days after all objections to Class 2 Claims have been resolved (the "Initial Class 2 Disbursement"). The amount of the Initial Class 2 Disbursement shall be determined by subtracting from the Distribution Funds (i) the Allowed Amount of Administrative Expenses and Priority Claims, and (ii) the Class 1 Escrow. The Initial Class 2 Disbursement shall be *pro rata* of all Class 1 and Class 2 Claims, taking into account the maximum possible Allowed amount of all Class 1 Claims. Upon resolution of the Insured Lawsuits and the final determination of the Allowed Amounts of the Class 1 Claims, if any, the Liquidated Debtor shall make a final *pro rata* disbursement to the respective Holders of Class 1 and Class 2 Claims of: (i) the Class 1 Escrow funds, and (ii) any amount remaining from the Administrative Escrow after payment of all post-Confirmation administrative expenses, including attorneys' fees and wages for Ms. Kircher, which shall be paid in the ordinary course of business (the "Final Disbursement"). The Liquidated Debtor will not make any distribution to Allowed Holders of Class 3 Equity Interests.

E.    Additional Provisions.

   1.    Procedures For Resolving Disputed Claims.

      a.    Prosecution of Objections to Claims.

Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, and except as otherwise provided in the Plan, the Liquidated Debtor shall have the exclusive right to make and file objections to all Claims.

Pursuant to the Plan, unless another time is set by order of the Bankruptcy Court, all objections to Claims and Equity Interests shall be Filed with the Court and served upon the Holders of each of the Claims and Equity Interests to which objections are made within 90 days after the Effective Date.

Except as may be specifically set forth in the Plan, nothing in the Plan, the Disclosure Statement, the Confirmation Order or any order in aid of Confirmation, shall constitute, or be deemed to constitute, a waiver or release of any Claim, Cause of Action, right of setoff, or other legal or equitable defense that, the Debtor had immediately prior to the commencement of the Bankruptcy Case, against or with respect to any Claim or Equity Interest. Except as set forth in the Plan, upon Confirmation, the Debtor shall have, retain, reserve and be entitled to assert all such Claims, Causes of Action, rights of setoff and other legal or equitable defenses that the Debtor had immediately prior to the commencement of the Bankruptcy Case as if the Bankruptcy Case had not been commenced.

      b.    Estimation of Claims.

Pursuant to the Plan, the Debtor may, at any time, request that the Bankruptcy Court estimate any contingent, disputed, or unliquidated Claim, pursuant to § 502(c) of the Bankruptcy Code, regardless of whether the Debtor or the Committee has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection and the

Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any contingent, disputed, or unliquidated Claim, that estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Debtor may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.

        c.      <u>Cumulative Remedies.</u>

In accordance with the Plan, all of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.  Until such time as an Administrative Claim, Claim, or Equity Interest becomes or is otherwise deemed in this Plan to be an Allowed Claim, such Claim shall be treated as a Disputed Administrative Claim, Disputed Claim, or Disputed Equity Interest for purposes related to allocations, Distributions, and voting under the Plan.

        d.      <u>Disallowance of Certain Claims and Interests.</u>

According to the Plan, all Claims held by entities against whom the Debtor has obtained a Final Order establishing liability for a cause of action under §§ 542, 543, 522(f), 522(h), 544, 545, 547, 548, 549, or 550 of the Bankruptcy Code shall be deemed disallowed, pursuant to § 502(d) of the Bankruptcy Code, and Holders of such Claims may not vote to accept or reject the Plan, both consequences to be in effect until such time as such causes of action against that entity have been settled or resolved by a Final Order and all sums due Debtor by that entity are turned over to Debtor or Liquidated Debtor.

e.    Controversy Concerning Impairment.

If a controversy arises as to whether any Claims or Equity Interests or any Class of Claims or Equity Interests are Impaired under the Plan, the Bankruptcy Court, after notice and a hearing, shall determine such controversy before the Confirmation Date. If such controversy is not resolved prior to the Effective Date, the Debtor's interpretation of the Plan shall govern.

## ARTICLE VII – MISCELLANEOUS.

A.    Effects of Confirmation.

1.    Amendments to the Plan.

The Debtor reserves all rights to amend, alter, or withdraw this Plan before conclusion of the Confirmation Hearing and to amend, modify, or alter this Plan after the Confirmation Date, in accordance with the applicable provisions of the Bankruptcy Code.

2.    Authority to Effectuate the Plan.

Upon the entry of the Confirmation Order by the Bankruptcy Court, the Plan provides all matters provided under the Plan will be deemed to be authorized and approved without further approval from the Bankruptcy Court. The Liquidated Debtor shall be authorized, without further application to or order of the Bankruptcy Court, to take whatever action is necessary to achieve consummation and carry out the Plan in accordance with this Plan and the Bankruptcy Code.

3.    Post-Confirmation Status Report.

In the event the Debtor fails to follow the provisions of Local Rule 3022-1, the Liquidated Debtor shall file a report within sixty (60) days from the date of the Order of Confirmation, setting forth the progress made in consummating the Plan. The report shall include:

20

a.     a statement of distribution by Class, name of creditor, date of distribution, and amount paid;

b.     a statement of any transfer of property to be transferred under the Plan; and

c.     a statement of affirmation that emerge has substantially complied with the provisions of the confirmed Plan.

The status report will be served on the United States Trustee and those parties who have requested special notice post-confirmation. The Bankruptcy Court may schedule subsequent status conferences in its discretion.

B.     Retention of Professionals.

The Liquidated Debtor may retain professionals on such terms as the Liquidated Debtor deems reasonable without Bankruptcy Court approval; *provided*, *however*, the Liquidated Debtor may retain any professionals previously retained by the Debtor without further Court approval. Moreover, the Liquidated Debtor may pay post-confirmation fees of the law firm Latham, Shuker, Eden & Beaudine, LLP ("Latham Shuker") up to a total of $15,000.00 from the Administrative Escrow without Bankruptcy Court Approval. In the event the total post-Confirmation fees of Latham Shuker exceed $15,000, Latham Shuker will submit an application for payment of such fees to this Court for approval. Any other professional retained by Liquidated Debtor shall submit an application for payment of any fees owed post-Confirmation.

C.     Conditions to Effectiveness.

The Effective Date shall not occur until entry of the Confirmation Order by the Bankruptcy Court in form and content acceptable to the Debtor and expiration of the appeal period with respect to the Confirmation Order without the filing of a notice of appeal of such Order; *provided, however,* that, if an appeal of the Confirmation Order is filed but no stay is

21

granted in connection with the appeal, the Debtor may in writing elect to permit the Effective Date to occur notwithstanding the pendency of the appeal.

Within thirty (30) days following the satisfaction or waiver of the foregoing condition, the Debtor shall so notify the Bankruptcy Court, and upon the filing of such notice the Plan shall become Effective without further Order of the Bankruptcy Court provided that all of the conditions to effectiveness of the Plan set forth herein, including those set forth below, have been met.

D.   Retention of Jurisdiction.

After the Effective Date, the Liquidated Debtor will be free to perform all functions assigned to it under the Plan without approval of the Bankruptcy Court, except as specifically set forth herein. However, the Bankruptcy Court will continue to retain jurisdiction in this Case with respect to the following matters:

1.   All objections to the allowance of Claims and Interests and the compromise of Claims;

2.   All applications for allowance of compensation and reimbursement of out-of-pocket expenses of professionals retained in the Debtor's case by Order of the Bankruptcy Court to the extent that such compensation and out-of-pocket expenses relate to services performed before the Confirmation Date; *provided, however,* that fees up to $15,000.00 of Latham Shuker for services rendered after the Effective Date may be paid by the Liquidated Debtor in the ordinary course of business without a Bankruptcy Court order; *provided, further, however,* in the event that an objection is made as to post-Confirmation Date requested fees or expenses, application shall be made to the Bankruptcy Court for allowance of such fees and expenses;

3.    All controversies and disputes arising under or in connection with the Plan;

4.    The enforcement and interpretation of the provisions of the Plan;

5.    To issue such orders in aid of execution and consummation of the Plan as may be necessary and appropriate;

6.    Any motion to modify the Plan in accordance with Section 1127 of the Bankruptcy Code, or to correct any defect, cure any omission, or reconcile any inconsistency in the Plan, Disclosure Statement, or any Confirmation Order as may be necessary to carry out the purposes of the Plan;

7.    All Claims arising from the rejection of any executory contract or lease;

8.    Such other matters as may be provided for in the Bankruptcy Code or the Plan;

9.    To protect the property of the Estate from adverse claims or interference inconsistent with the Plan; and

10.    To ensure that distributions are accomplished, as provided herein, and to resolve any dispute concerning the right of any person to a distribution hereunder, under applicable law, or under a contract or agreement.

11.    All Causes of Action.

E.    Headings.

Article, Section, and Paragraph headings used herein are for convenience only and shall not affect the interpretation or construction of any provision of this Plan.

F.    Cramdown.

Debtor reserves the right to seek confirmation of the Plan under § 1129(b) of the Bankruptcy Code.

G.     <u>Regulatory Approval and Retirement Plans</u>.

It will not be necessary for the Debtor to await any required regulatory approvals from agencies or departments of the United States to consummate the Plan.  The Plan will be implemented pursuant to its provisions and the provisions of the Bankruptcy Code.

H.     <u>Notices</u>.

All notices required or permitted to be made in accordance with the Plan shall be in writing and shall be delivered personally, by facsimile transmission, or mailed by United States Mail to the following:

| | |
|---|---|
| Counsel for Debtor: | Justin M. Luna, Esq.<br>Latham, Shuker, Eden and Beaudine, LLP<br>111 N. Magnolia Avenue, Suite 1400<br>Orlando, Florida 32801 |
| Debtor: | Blackbear Two, LLC<br>Attn: Tracy Kircher<br>7001 International Drive<br>Orlando, FL 32819 |
| United States Trustee: | United States Trustee's Office<br>George C. Young Federal Building<br>400 West Washington Street, Suite 1100<br>Orlando, Florida 32801 |

I.     <u>Manner of Payment</u>.

Any payment of Cash made under this Plan may be made either by check drawn on an account of the Liquidated Debtor, by wire transfer, or by automated clearing house transfer from a domestic bank, at the option of the Liquidated Debtor.

J.    Compliance with Tax Requirements.

In connection with this Plan, to the extent applicable, the Liquidated Debtor in making distributions under this Plan shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit and all distributions, pursuant to this Plan, shall be subject to such withholding and reporting requirements.  The Liquidated Debtor may withhold the entire distribution due to any Holder of an Allowed Claim until such time as such Holder provides to the Liquidated Debtor, the necessary information to comply with any withholding requirements of any governmental unit.  Any property so withheld will then be paid by the Liquidated Debtor to the appropriate authority.  If the Holder of an Allowed Claim fails to provide to the Liquidated Debtor the information necessary to comply with any withholding requirements of any governmental unit within three (3) months after the date of first notification by the Liquidated Debtor to the Holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then the Holder's distribution shall be treated as an undeliverable distribution in accordance with the below.  The payment of all taxes on all distributions shall be the sole responsibility of the distributee.

K.    Transmittal of Distributions to Parties Entitled Thereto.

All distributions by check shall be deemed made at the time such check is duly deposited in the United States mail, postage prepaid.  All distributions by wire transfer shall be deemed made as of the date the Federal Reserve or other wire transfer is made.  Except as otherwise agreed with the Holder of an Allowed Claim or as provided in this Plan, any property to be distributed on account of an Allowed Claim shall be distributed by mail upon compliance by the Holder with the provisions of this Plan to: (i) its address set forth in its Proof of Claim; (ii) the latest mailing address filed for the Holder of an Allowed Claim entitled to a distribution; (iii) the latest mailing address filed for a Holder of a filed power of attorney designated by the Holder

of such Allowed Claim to receive distributions; (iv) the latest mailing address filed for the Holder's transferee as identified in a filed notice served on the Debtor pursuant to Bankruptcy Rule 3001(e); or (iv) if no such mailing address has been filed, the mailing address reflected on the Schedules or in the Debtor's books and records.

      L.      <u>Exculpation from Liability</u>.

      The Debtor, the Liquidated Debtor, their respective shareholders, members, Manager, officers, and directors, and their respective Professionals (acting in such capacity) shall neither have nor incur any liability whatsoever to any Person or Entity for any act taken or omitted to be taken in good faith in connection with or related to the formulation, preparation, dissemination, or confirmation of the Plan, the Disclosure Statement, any Plan Document, or any contract, instrument, release, or other agreement or document created or entered into, or any other act taken or omitted to be taken, in connection with the plan or the Bankruptcy Case; provided, however, that this exculpation from liability provision shall not be applicable to any liability found by a court of competent jurisdiction to have resulted from fraud or the willful misconduct or gross negligence of any such party. With respect to the Professionals, the foregoing exculpation from liability provision shall also include claims of professional negligence arising from the services provided by such Professionals during the Bankruptcy Case. The rights granted hereby are cumulative with (and not restrictive of) any and all rights, remedies, and benefits that the Debtor, the Liquidated Debtor, and their respective agents have or obtain pursuant to any provision of the Code or other applicable law, or any agreement. This exculpation from liability provision is an integral part of the Plan and is essential to its implementation.

      Notwithstanding anything to the contrary contained herein, the provisions hereof shall not release or be deemed a release of any of the Causes of Action otherwise preserved by

the Plan. The terms of this exculpation shall only apply to liability arising from actions taken on or prior to the Effective Date.

**ANY BALLOT VOTED IN FAVOR OF THE PLAN SHALL ACT AS CONSENT BY THE CREDITOR CASTING SUCH BALLOT TO THIS EXCULPATION FROM LIABILITY PROVISION. MOREOVER, ANY CREDITOR WHO DOES NOT VOTE IN FAVOR OF THE PLAN MUST FILE A CIVIL ACTION IN THE BANKRUPTCY COURT ASSERTING ANY SUCH LIABILITY WITHIN THIRTY (30) DAYS FOLLOWING THE EFFECTIVE DATE OR SUCH CLAIMS SHALL BE FOREVER BARRED.**

Notwithstanding the foregoing the Liquidated Debtor shall remain obligated to make payments to Holders of Allowed Claims as required pursuant to the Plan.

M.    Fractional Cents; Multiple Distributions.

Notwithstanding any other provisions of this Plan to the contrary, no payment of fractional cents will be made under this Plan. Cash will be issued to Holders entitled to receive a Distribution of Cash in whole cents (rounded to the nearest whole cent).

N.    Revocation and Withdrawal of this Plan.

The Debtor reserves the right to withdraw this Plan at any time before entry of the Confirmation Order. If (i) the Debtor revokes and withdraws this Plan, (ii) the Confirmation Order is not entered, (iii) the Effective Date does not occur, (iv) this Plan is not substantially consummated, or (v) the Confirmation Order is reversed or revoked, then this Plan shall be deemed null and void.

O.    Modification of Plan.

The Debtor may amend or modify this Plan in accordance with § 1127(b) of the Bankruptcy Code, or remedy a defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.

**DATED** this 30th day of October 2013 in Orlando, Florida.

/s/ Justin M. Luna
Justin M. Luna, Esquire
Florida Bar No. 0037131
Christopher R. Thompson, Esquire
Florida Bar No. 0093102
**LATHAM, SHUKER,**
**EDEN & BEAUDINE, LLP**
111 N. Magnolia Avenue, Suite 1400
Orlando, Florida 32801
Telephone:  (407) 481-5800
Facsimile:  (407) 481-5801